UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
(Hartford)

JOHN E. COX, EXECUTIVE DIRECTOR, NEW HAVEN )
COMMISSION ON EQUAL OPPORTUNITIES, )
)
)
             Plaintiff )
v. )
)
EDWARD L. BLAND in his official and individual capacities )
AND NEW HAVEN HOUSING AUTHORITY, )
)  No. 3:00 CV 311 (CFD)
    Defendant and Third Party Plaintiffs )
v. )
)
BEACON/CORCORAN, JENNISON, LP, STAMFORD )
WRECKING AND ANDREW CUOMO, SECRETARY FOR )
THE FEDERAL AND UNITED STATES DEPARTMENT OF )
HOUSING AND URBAN DEVELOPMENT (HUD), )
)
       Third Party Defendants )  FEBRUARY 27, 2006
)

### THIRD PARTY DEFENDANT BEACON/CORCORAN PARTNERS LLC'S RENEWED MOTION FOR SUMMARY JUDGMENT ON COUNTS II AND III OF THE CROSS CLAIM OF THIRD PARTY DEFENDANT STAMFORD WRECKING COMPANY

Pursuant to Fed.R.Civ.Proc. 56, Local Rule 9(c), this Court's orders dated March 22, 2004 and February 16, 2006, and the letter agreement of the parties dated January 23, 2006 (and entered as Document No. 148 on the docket of this case), Third Party Defendant Beacon/Corcoran Partners LLC ("BCJ") hereby renews its motion for summary judgment on Counts II and III of the cross claim of Third Party Defendant Stamford Wrecking Company ("Stamford") against BCJ. Answer, Affirmative Defenses, Counterclaim and Cross Claims filed by Stamford on July 6, 2001, Cross Claims, Counts One and Two. As grounds for this motion, BCJ states as follows:

1.	This case, as originally filed by the parties, involved various claims concerning the wage rates paid to laborers doing asbestos removal work at a federally funded housing development operated by the New Haven Housing Authority ("Housing Authority"), the Elm Haven Public Housing Development ("Elm Haven"). The Elm Haven project involved the demolition of low-rise apartment buildings and the subsequent construction of privately owned and operated mixed-income, two-story town homes. Demolition and construction activities are funded through a federal HOPE VI grant awarded by the United States Department of Housing and Urban Development ("HUD") to the Housing Authority. Pursuant to §12(a) of the United States Housing Act, as amended, 42 U.S.C. 1437j(a), as well as the relevant contracts, the demolition and construction activities at Elm Haven are subject to the Davis-Bacon Act prevailing wage requirements, 40 U.S.C. 276a, et seq.

2.	The original plaintiff in this case was John Cox, the Executive Director of the New Haven Commission on Equal Opportunities ("CEO"). The CEO brought this action in Connecticut Superior Court in April, 1999 against the Housing Authority alleging that the Housing Authority had failed to ensure that prevailing wage rates were paid to laborers performing asbestos removal work at Elm Haven in violation of various provisions of the City of New Haven's Code of Ordinances, Article I, Chapter 12 ½, and seeking, inter alia, an order requiring the Housing Authority to stop payment under its contract for the demolition work in question.

3.	In November, 1999, the Housing Authority filed a third party complaint against HUD, a BCJ entity and Stamford, which was the subcontractor that performed the demolition work at Elm Haven, including the asbestos removal work, and employed the asbestos workers. The Housing Authority's third party complaint alleged that, if the CEO's claims were correct, it

was HUD, BCJ and/or Stamford, not the Housing Authority, which were responsible for ensuring that appropriate wage rates were paid at Elm Haven and which therefore should be responsible for any resulting damages.

4. In February, 2000, HUD removed the case to federal court and later moved to dismiss the claims against HUD. By mid 2000, the parties undertook settlement discussions, as a result of which the case was held in abeyance until mid 2001. In July, 2001, Stamford filed its answer to the Housing Authority's third party complaint as well as counterclaims against the Housing Authority and cross claims against BCJ and HUD. Stamford's claims against BCJ were that BCJ failed fully to reimburse Stamford for payments Stamford made to asbestos workers at Elm Haven under wage rates issued by the U.S. Department of Labor ("DOL") for asbestos workers in May, 1999 and March, 2001.

5. By orders of this Court, further responses to the pending counterclaims and cross claims were stayed pending a court-ordered settlement conference before Magistrate Judge Garfinkel on December 4, 2001. At that conference, it was determined that significant legal issues pertaining to the claims of the CEO and Stamford required resolution prior to further consideration of the status of the case. As a result, dispositive motions were filed by various parties, including BCJ's Motion for Summary Judgment on all Stamford's cross claims.

6. As the result of further settlement discussions, by order dated March 22, 2004, this Court denied all pending motions without prejudice to renewal in the event that settlement was not reached. By letter dated January 23, 2006, the parties jointly informed the Court that their settlement discussions had resulted in agreement to dismiss all pending claims in the lawsuit except for Stamford's state law claims against BCJ (Stamford Cross Claim, Counts II and III) for misrepresentation and negligent misrepresentation. In that letter, the parties also

3

informed this Court that they agreed that BCJ's motion for summary judgment may be renewed with respect to Stamford's state law claims, with the other claims in the case to be dismissed subsequent to this Court's ruling on Stamford's state law claims in accordance with the procedure set forth in the January 23, 2006 letter.

7. In its claim under federal law (Count I of its cross claim, that is not in issue on this renewed motion), Stamford claimed that it should be retroactively compensated, because new wage rates were issued after the commencement of work on the project, for the wages it chose to pay its own asbestos workers from the beginning of the contract which were equal to or in excess of any wage rates ever applicable to asbestos workers. As shown in BCJ's Summary Judgment Memorandum, this claim was unsupportable and was above and beyond what Stamford was rightfully owed under its contract and by law. Moreover, Stamford's claim for compensation, even if it had any merit, could not properly be heard by this Court. The majority of the claim came too late under the applicable contractual statute of limitations and, in any event, must by law be heard by DOL, the agency charged by statute with the sole power to adjudicate disputes such as this one in the first instance.

8. The misrepresentation claims at issue in this renewed motion (Counts II and III of Stamford's cross claim, alleging that BCJ in any event promised that it would provide Stamford the retroactive compensation sought) are meritless. Although BCJ categorically denies making such a representation to Stamford, even if it had, such a promise would have been unenforceable and illegal under the applicable contracts and regulations. Such an unenforceable promise is not actionable in fraud.

9. In addition, BCJ must be granted summary judgment on Stamford's state law misrepresentation claims because those claims, like its federal claims, are barred by Stamford's

4

failure to exhaust its administrative remedies before the U.S. Department of Labor, as well as by the Stamford's failure to bring those claims within the 6-month limitations period set forth in the applicable contract.

10. As shown in the accompanying memoranda, Stamford's misrepresentation claims are based on the single assertion that BCJ allegedly "recognized" that the wrong wage rate had been issued (Residential instead of Heavy/Highway) and promised it would seek to correct it and retroactively increase Stamford's contract price. As such, Stamford's misrepresentation claims fall within the Department of Labor requirement that all questions relating to the application or interpretation of wage determinations be determined by DOL in the first instance. 29 CFR 5.13. Likewise, the misrepresentation claims fall within the limitations requirement of Stamford's subcontract requiring all claims "arising out of anything done in connection with this Agreement" to be commenced within six months of the contract's termination or the date the claim arises.

11. In further support of its motion, BCJ relies upon the following, all of which are incorporated herein:

      a. BCJ's Supplemental Memorandum, filed herewith in accordance with this Court's order dated February 16, 2006;

      b. BCJ's Memorandum in Support of Motion for Summary Judgment on Cross Claim of Third Party Defendant Stamford Wrecking Company, filed March 28, 2002 in support of BCJ's original motion for summary judgment (Docket Document No. 73);

      c. BCJ's Local Rule 9(c)(1) Statement of Undisputed Material Facts, filed March 28, 2002, in support of BCJ's original motion for summary judgment (Docket Document No. 74);

      d. the Affidavits of Howard Cohen and Mercedes Sherman, and exhibits thereto, filed March 28, 2002 in support of BCJ's original motion for summary judgment (Docket Document Nos. 75 and 76); and

e. BCJ's Reply to Third Party Defendant Stamford Wrecking Company's Opposition to Motion for Summary Judgment, filed November 27, 2002 in support of BCJ's original motion for summary judgment (Docket Document No. 126).

WHEREFORE, BCJ respectfully requests that this Court grant its motion for summary judgment on Counts II and III of the cross claim of Stamford against BCJ.

Respectfully submitted,

THIRD PARTY DEFENDANT
BEACON/CORCORAN JENNISON
PARTNERS, LLC

By their attorneys,

Richard M. Bluestein (Fed Bar #ct23002)
Janet Steckel Lundberg (Fed Bar #ct23003)
KROKIDAS & BLUESTEIN LLP
600 Atlantic Avenue
Boston, MA 02210
(617) 482-7211

1877\0001\160812.1